David T. Gibbons, J.
Petition for a judgment, annulling the determination of respondents to recoup from the petitioner utility payments accruing four months preceding the date of an advancement to obviate a cutoff of utility services, is granted.
It is undisputed that LILCO, the utility company herein, had, for a long period of time, namely: from August 19, 1974 through May 16, 1975, submitted minimal estimated bills to petitioner. However, the June 1975 bill, based on an actual *583 reading in the amount of $574.69, was sent to petitioner. Thereafter, an additional estimated bill, dated July 18, 1975, was sent to petitioner, together with a threatened utility shutoff. As a result of this threat, petitioner requested the Department of Social Services to pay the bill in order to prevent the shutoff.
Petitioner and her three children are recipients of public assistance in the category of "aid to families with dependant children”, and this aid is the sole source of petitioner’s income.
Before the Department of Social Services would pay the utility bill in the amount of $687.82 covering utility service from March 18, 1975 to July 17, 1975, petitioner was required to sign a written request for the payment of this bill and for the deduction from her grant, in six equal amounts, to reimburse the Department of Social Services for the payment of said bill. In addition, it was agreed that all future bills were to be paid directly to LILCO and that amount to be deducted from her future monthly grant.
On October 1, 1975, petitioner was notified that the Department of Social Services had authorized payment and that recoupment from petitioner’s grant for a period of six months would commence. This reduction would leave petitioner with $197.90 from her monthly grant of $312.55. A fair hearing was requested on October 24, 1975 to review this proposed action. This hearing was held on November 11, 1975 and, by decision dated December 15, 1975, the determination was modified to the extent of limiting recoupment to services that were rendered to the petitioner during the four-month period immediately prior to the date the advance allowance was issued.
Each of the parties relies on various sections of the Federal and State laws in the social welfare area. However, it is this court’s opinion that the only relevant section, under the particular facts present herein, is subdivision 3 of section 350-j of the Social Services Law which states: "Emergency assistance to needy families with children shall be provided in accordance with the regulations of the department for children who are without available resources, and when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home, and such destitution or such need did not arise because such children or relatives refused without good cause to accept employment or training *584 for employment.” (See, also, 18 NYCRR 372.2 [a] [1] [2] [3] and [4].)
The question to be considered here is whether, under the circumstances surrounding this inordinately large and unexpected utility bill, it presented such "sudden and unexpected emergency”, within the meaning, of section 350-j of the Social Services Law, as would bar recoupment for the cash advance made to prevent termination of electric service.
This court is mindful of the holding in Matter of Adkin v Berger (50 AD2d 459) where recoupment of funds to prevent a utility shutoff was permitted in a case where, with full knowledge of the arrears, the recipient of public assistance used his allotment for other purposes.
Here, however, we have a situation where, because of a protracted series of underestimates of utility usage by LILCO, an obligation of such large magnitude was presented to the petitioner as to be beyond her capabilities to meet.
The distinction is recognized in the Adkin case where the court held that recoupment would be denied where money is paid to a recipient through an administrative error.
The court held (p 461): "overpayments resulting from administrative errors of which the recipients very likely would have no knowledge and for which recovery would be unfair since the extra funds could easily be unwittingly dissipated.”
The foregoing rule expressed in the Adkin case applies to the instant matter.
The unexpected and inordinately large utility bill did not arise out of any willful or fraudulent conduct on the part of the petitioner. It was the result of a practice on the part of LILCO under which it presented bills in minimal amounts to the customer based merely on "estimates” and after continuing this practice for a long time, finally, after actually reading the meter, it sent a bill (accumulating all of the underestimated prior charges) in such an extremely large amount as to be beyond the capability of the petitioner to pay.
The effect of such practice creates a result which differs not at all from a payment made through an administrative error. To compel recoupment in either case would result in driving the recipient into a state of dire destitution contrary to the purpose of the law.
Here, the reduction of the grant to petitioner and her three *585 minor children to $197.90 per month will result in such destitution, and it will not be countenanced.
Accordingly, the determination of respondent Berger, insofar as it affirms respondent D’Elia’s decision to recover the instant utility payments, is annulled. Respondent D’Elia shall cease deducting the "advance payment” for recoupment of the utility payment noted above, and a grant in the amount of any moneys already deducted for said utility payment recoupment shall be issued to reimburse petitioner.