Priscilla DAVIS, Individually and on be-
half of her minor daughter Robyn Gray,
and on behalf of all others similarly situ-
ated, Plaintiffs,

and

Rosie Vaszuez, Gail Warren and Geneva
Warren, Plaintiffs-Intervenors,

v.

J. Henry SMITH, Individually and as Com-
missioner of the New York City Depart-
ment of Social Services, James Dumpson,
as former Commissioner of the New
York City Department of Social Services,
Philip Toia, Individually and as Commis-
sioner of the New York State Depart-
ment of Social Services, Stephen L. Ber-
ger, Individually and as former Commis-
sioner of the New York State Depart-
ment of Social Services, and Charles
Bates, Individually and as Commissioner
of the Westchester County Department
of Social Services, Defendants.

No. 75 Civ. 5217 (CHT).

United States District Court,
S. D. New York.

May 10, 1977.

Kalman Finkel, John E. Kirklin, Elaine C. Buck, Constance P. Carden, The Legal Aid Society, Civ. Div., New York City, of counsel, for plaintiffs.

Martin A. Schwartz, Eileen Landau, Westchester Legal Services, Inc., White Plains, N. Y., of counsel, for plaintiffs-intervenors and proposed plaintiffs-intervenors.

Louis J. Lefkowitz, Atty. Gen., New York City, for New York State defendants; David L. Birch, Asst. Atty. Gen., Brooklyn, of counsel.

W. Bernard Richland, Corp. Counsel, Gayle S. Redford, Asst. Corp. Counsel, New York City, of counsel, for defendants.

Douglas Jackson, Gerold Harris, Westchester County Attorney's Office, White Plains, N. Y., of counsel, for Westchester County defendants.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff, a recipient of grants under the Aid to Families with Dependent Children Program ("AFDC") of the Social Security Act, 42 U.S.C. §§ 601 *et seq.*, brought this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) challenging the validity of Section 352.7(g)(5) of Title 18 of the New York Code, Rules and Regulations ("NYCRR" or "regulations") under which an advance allowance made to a recipient to prevent a utility shut-off due to nonpayment of past electric bills could be deducted or recouped from subsequent AFDC grants.[1] Plaintiff, on behalf of herself and

---

1. 18 NYCRR § 352.7(g)(5) provides as follows: "For a recipient of public assistance, an advance allowance may be provided to pay for utilities already furnished in the same dwelling in which he resides and for which a grant has been previously issued, to prevent

all others similarly situated, sought injunctive and declaratory relief under 28 U.S.C. §§ 2201–02 and Rules 57 and 65 of the Federal Rules of Civil Procedure ("Rules"), arguing that Section 352.7(g)(5) violates due process and equal protection of the law, and that it is also invalid under the Supremacy Clause of the United States Constitution because it contravenes Sections 401, 402(a)(7) and 402(a)(10) of the Social Security Act, 42 U.S.C. §§ 601, 602(a)(7) and 602(a)(10), and the regulations promulgated thereunder, 45 C.F.R. §§ 233.20(a)(3)(ii)(c) & (d) and (a)(12)(i)(a).[2]

The plaintiff moved on February 10, 1976 for class certification, preliminary injunction and summary judgment. On stipulation of the parties dated March 4, 1976 the Court permitted intervention by additional plaintiffs. Plaintiff-intervenors filed an amended complaint as of right on July 28, 1976 to incorporate allegations relating to 18 NYCRR § 372.2(a)(2),[3] a new State regulation on emergency assistance. Plaintiff then moved on August 10, 1976 to similarly amend her complaint to incorporate claims relating to emergency assistance under 18 NYCRR § 372.2(a)(2) and 45 C.F.R. § 233.-120, which claims appear most salient in light of the decision in *Hagans v. Berger*, 536 F.2d 525 (2d Cir. 1976), upholding New York State's recoupment of rent advances. Presently before the Court is a motion for intervention by additional plaintiffs and an amended motion for class action certification, summary judgment and a permanent injunction, submitted on behalf of all plaintiffs, plaintiff-intervenors and proposed

plaintiff-intervenors (sometimes referred to collectively as "the plaintiffs"). Defendants move to dismiss the original complaint and request that summary judgment be awarded in their favor.

Despite the plethora of motions in this case, the substantive legal issues may be delineated rather succinctly. However, the defendants urge that the federal court abstain from deciding those legal issues at this time because of appeals pending before the New York State Court of Appeals challenging New York's recoupment provisions. *See Adkin v. Berger*, 50 A.D.2d 459, 378 N.Y.S.2d 135 (3d Dep't 1976) (recoupment of rent and utility advances upheld where no showing of emergency circumstances); *Dunn v. Bates*, 50 A.D.2d 561, 374 N.Y.S.2d 677 (2d Dep't 1975) (grant of recoupable rent advance and consequent denial of emergency assistance held invalid).

### A. Motion to Amend Plaintiff's Complaint

■ Rule 15(a) instructs that leave to amend pleadings "shall be freely given when justice so requires." During the pendency of this litigation 18 NYCRR § 372.2(a)(2) came into effect limiting the availability of State-awarded emergency assistance to those AFDC recipients whose needs cannot be met by the recoupable advance procedure codified in section 352 of that title. Since this new section is obviously germane to the challenged procedure and to the rights asserted by the plaintiffs, the interests of judicial economy are best served by permitting the plaintiff to amend

---

a shut-off or to restore services. Such an allowance shall not exceed the cost of such utilities for the four-month period immediately preceding the advance payment, and may be provided only where the recipient has made a request in writing for such an allowance, and has also requested in writing that his grant be reduced in equal amounts over the next six months to repay the amount of advance allowance."

2. Whatever their ultimate merits, plaintiff's constitutional claims are at least arguable, thus vesting this Court with subject matter jurisdiction under 28 U.S.C. § 1343(3), and therefore, it may consider the pendent statutory claim,

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), without need to convene a three-judge court unless the statutory claim proves not to be dispositive. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

3. New York State amended 18 NYCRR § 372.-2(a)(2) on November 17, 1975 to provide as follows:

"Emergency assistance shall be provided immediately by a social services district [if] . . . needs cannot be met under Part 352 of this Title by an advance allowance."

her original complaint to conform to current developments in the law. The amended complaint, annexed as Exhibit A to Plaintiffs' Notice of Motion For Leave to File Amended Complaint, enables plaintiff to focus on the major issue: whether granting recoupable advances rather than non-recoverable emergency assistance in order to prevent a utility shut-off regardless of the circumstances fails to conform with the federal emergency assistance plan.

## B. *Intervention Motion*

Rule 24(b)(2) authorizes permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." The rule, which is to be liberally construed, 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1924, at 473 (1972) ("Wright & Miller"); 3B *Moore's Federal Practice* § 24.-10[2] (2d ed. 1977), is satisfied where, despite factual differences between the parties, a common question of law is involved. *See Boone v. Wyman*, 295 F.Supp. 1143, 1147 (S.D.N.Y.) (Mansfield, J.), aff'd, 412 F.2d 857 (2d Cir. 1969), *cert. denied*, 396 U.S. 1024, 90 S.Ct. 600, 24 L.Ed.2d 518 (1970); *Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409, 414 (S.D.N.Y.1974) (Gurfein, J.). Like the present plaintiffs, the proposed intervenors challenge the validity of section 352.7(g)(5) and section 372.2(a)(2) in light of the Social Security Act's emergency assistance plan requirements. The proposed plaintiff-intervenors were also offered the same Hobson's choice of consenting to recoupable advance payments under section 352.7(g)(5) or receiving nothing. Intervention will not unduly delay or prejudice the adjudication of the rights of the original parties to this action. The proposed intervenors are represented by the same counsel as the plaintiffs already in this action, and their participation facilitates the effective adjudication of the legal issues in dispute. Hence, despite variations in the factual circumstances of the threatened shut-offs, the recipients requesting special assistance do share common legal claims, and therefore the Court grants the motion to intervene.

## C. *The Class Action Motion*

The Court declines to certify this action under Rule 23(c). Although plaintiffs satisfy the requirements of the rule, certification of class action status is unnecessary and would not provide a superior method of adjudicating the issues since retroactive monetary relief cannot be awarded under the facts of this case, *see Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Monell v. Department of Social Services*, 532 F.2d 259 (2d Cir. 1976), cert. granted, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977) (No. 75–1914), and since it is clear that the prospective effects of declaratory and injunctive relief will inure to the benefit of all the requested class members. *See McGraw v. Berger*, 410 F.Supp. 1042, 1045 (S.D.N.Y.), aff'd, 537 F.2d 719 (2d Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977); *Jones v. Human Resources Administration*, 391 F.Supp. 1064, 1086 (S.D.N.Y. 1975), aff'd, 528 F.2d 696 (2d Cir.), *cert. denied*, 429 U.S. 825, 97 S.Ct. 80, 50 L.Ed.2d 88 (1976); 7A Wright & Miller § 1772, at 4–5. In finding, for the reasons explained herein, that 18 NYCRR §§ 352.7(g)(5) and 372.2(a)(2) operate unlawfully to foreclose eligible persons from emergency assistance and that they are therefore null and void, this Court does not determine the particular merits of the individual claims for emergency assistance. The judgment in this case merely enjoins the State from enforcing regulations which automatically exclude from eligibility for emergency assistance persons who need aid to prevent utility shut-offs regardless of the emergency nature of the particular situation.

## D. *Abstention*

Defendants contend that this Court should abstain from exercising its jurisdiction over the dispute in this case and await the outcome of the pending State litigation in *Adkin v. Berger, supra,* and *Dunn v. Bates, supra.* The judicially fashioned policy of self-restraint—the abstention doctrine—is not intended, however, to grant state courts the first opportunity to determine certain questions involving fed-

eral law. Indeed, the policy of abstention is appropriate only in "exceptional circumstances," *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), *quoting Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), as where clarification of a relevant but ambiguous state statute may dispose of the legal issue presented to the federal court. In such an instance the federal court may properly defer to a state court which has the opportunity of construing the law in a manner which does not offend federal law and thereby preserve the legislation. *See Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In line with this principle, the United States Court of Appeals for the Second Circuit has explained that

> "[w]here a state statute is unambiguous the court must perform its adjudicative duty and has no right to abstain merely because a state court decision might render a federal adjudication unnecessary." *McRedmond v. Wilson,* 533 F.2d 757, 761–62 (2d Cir. 1976).[4]

Although the state court faces issues identical to those raised here and its invalidation of these regulations would dispose of this case, the existence of parallel lawsuits would not justify abstention under the explicit directive of the Second Circuit quoted above.

### E. The Merits

Since the disputed legal issues are clearly before the Court and their resolution does not require further fact-finding, the Court shall proceed to decide the merits of the claims by ruling on the application for summary judgment rather than on the motion for a preliminary injunction.

At the core of the litigation is the question whether a state may, consistent with the federal Social Security Act, limit its emergency assistance plan by excluding from eligibility those persons whose need arises from a threatened or actual utility shut-off. The Act authorizes federal financial participation to match a state's periodic expenditure for emergency assistance. 45 C.F.R. § 233.120(b). Emergency assistance is the non-recoverable payment of aid to meet a special or irregular situation of need. It exists separately from the regular assistance program embodied in AFDC. New York State provides, however, under 18 NYCRR § 372.2(a)(2), that emergency assistance may be granted only to supply "needs [which] cannot be met under Part 352 of this Title by an advance allowance." Since that part authorizes recoupable advances in utility shut-off cases, *id.* § 352.-7(g)(5), the State replies to all requests in response to utility shut-offs with the offer of recoupable advances, and does not provide emergency assistance in such cases regardless of the particular circumstances that led to the threatened or actual termination of services. In effect, then, the State regulations operate to eliminate utility shut-offs from the categories appropriate for emergency assistance.

■ It is well-settled that even though the emergency assistance program is optional, once a state chooses to participate in it, it becomes obligated to establish a plan which follows the eligibility conditions established by federal law. *Townsend v. Swank,* 404 U.S. 282, 287, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). New York participates in the emergency assistance program as codified in N.Y. Social Services Law § 350–j and therefore, as has been clearly established in this circuit, the State may not define the eligibility for emergency assistance in a manner more restrictive than the Social Security Act. *Lynch v. Philbrook,*

---

4. *Adkin v. Berger* and *Dunn v. Bates* consider whether New York's recoupable advance procedure conforms with its emergency assistance plan under N.Y. Social Services Law § 350–j, which is virtually identical to the federal plan codified in 42 U.S.C. § 606(e) and amplified by 45 C.F.R. § 233.120. The terms and meanings of 18 NYCRR §§ 352.7(g)(5) and 372.2(a)(2) are neither ambiguous nor subject to significantly varying interpretations.

In addition, the Second Circuit's awareness of the pending State litigation in *Adkin v. Berger* and *Dunn v. Bates* did not lead it to abstain in *Hagans v. Berger, supra,* 536 F.2d at 530–32.

550 F.2d 793 (2d Cir. 1977); *Hagans v. Berger, supra*, 536 F.2d at 532, *citing Mandley v. Trainor*, 523 F.2d 415 (7th Cir. 1975).

■ This Court must therefore determine whether the Social Security Act contemplates utility shut-offs as appropriate for emergency assistance, and whether a State plan which denies emergency assistance in such situations thereby contravenes the mandate of the Act. This Court acknowledges the recent observation by the Second Circuit that "the welfare statutes now rival the Internal Revenue Code in complexity," *Lynch v. Philbrook, supra*, 550 F.2d at 795, although in this instance it is aided by pertinent comments in the Senate Report on the emergency assistance amendments to the Social Security Act. Emergency assistance is there explained as intending to supplement regular AFDC assistance to meet "emergency needs when a crisis occurs." One example of such a crisis is "when utilities are turned off." S.Rep. No. 744, 90th Cong., 1st Sess., 1967 U.S.Code, Cong. and Admin.News, pp. 2834, 3002; *see* 1968 N.Y. State Legis. Annual 255, *cited with approval in Baumes v. Lavine*, 38 N.Y.2d 296, 303–04, 379 N.Y.S.2d 760, 765–66, 342 N.E.2d 543, 547–548 (1976), *and Adkin v. Berger, supra; see Kozinski v. Schmidt*, 409 F.Supp. 215, 218 (E.D.Wis. 1975); *Bryant v. Lavine*, 79 Misc.2d 425, 359 N.Y.S.2d 492 (Sup.Ct., Monroe Cty.1976), *aff'd*, 49 A.D.2d 673, 370 N.Y.S.2d 721 (4th Dep't 1975); *Lofton v. Berger*, 392 N.Y.S.2d 201 (Sup.Ct., Nassau Cty.1977).[5]

Under the provisions of Section 406(e) of the Social Security Act, 42 U.S.C. § 606(e), and 45 C.F.R. § 233.120, emergency assistance is provided to needy families with children when there is a child under 21 without available resources and living with relatives specified in 42 U.S.C. § 606(a), if the assist-

ance is necessary to avoid destitution or to provide living arrangements in a home, and if the need did not arise because the child or relatives refused without good cause to accept training or employment.

If the plaintiffs' situations entitle them to emergency assistance under federal standards, then New York, having adopted an emergency assistance program, must grant such assistance. And, once granted, those benefits cannot be later recouped. *See Bryant v. Lavine, supra.*[6]

In *Hagans v. Berger, supra*, the Second Circuit found that New York's practice under 18 NYCRR § 352.7(g)(7) of recouping rent advances paid to AFDC recipients threatened with eviction was not inconsistent with the Social Security Act and with federal regulations providing for aid to needy children. Specifically, the court held that recoupment from current assistance grants without a determination of the availability of other funds to meet the needs of the family did not violate the Social Security Act even though it left the recipients with less current assistance than allocated for calculated need. The *Hagans* court also considered whether the recoupment of rent advances violated the emergency assistance provisions of the Social Security Act. Noting that New York incorporated such provisions in its Social Services Law § 350–j, the court of appeals relied upon the State's interpretation of that law as applicable to "sudden and unexplained emergency events" and "not to remedy the anticipated demands created as the result of everyday life." *Id.* at 532, *quoting from Baumes v. Lavine, supra*, 38 N.Y.2d at 304, 379 N.Y.S.2d at 767, 242 N.E.2d at 548. Accordingly, the *Hagans* court agreed with the conclusion of a lower New York court that "advances made to pay regular month-

---

**5.** *But see Adkin v. Berger, supra*, which held that advances to prevent a utility shutoff "were not nonrecoverable emergency payments." *Id.* at 137. That case, however, appears to be limited to its particular facts. The New York court found that the petitioners, who offered no satisfactory explanation or excuse for the unavailability of funds previously provided for utilities, were not in extraordinary circumstances

nor faced with sudden and unexplained emergency events, but had mismanaged the adequate regular grants and requested additional aid to meet their normal expenses.

**6.** A recoverable advance is essentially a mere loan and is not an adequate alternative for emergency assistance when such assistance is warranted.

ly rent and utility bills are not non-recoverable emergency payments within section 350–j of the Social Services Law." *Id., citing Adkin v. Berger, supra.*

All of the plaintiffs before this Court urge that their claims are distinguishable from the claims in *Hagans.*

"Measured against the *Hagans'* Court's test for determining when emergency assistance is required—'for sudden and unexplained demands created as the result of everyday life'—the proposed intervenors are clearly entitled to emergency assistance. Having diligently paid all of the bills sent to them for the periods in question, [none of the plaintiffs] . . could have anticipated that because of gross billing errors they would suddenly be required to immediately pay large additional amounts of money for the same period of service." Plaintiffs' Brief in Support of Motions for Intervention, Temporary Restraining Order, and Preliminary Injunction; For Leave to Amend the Complaint; and For Class Action Certification, Summary Judgment, and a Permanent Injunction, filed July 28, 1976 at 19. (Citation omitted). The defendants interpret the decision in *Hagans v. Berger* to the contrary, inferring that the State is not required to provide emergency assistance to pay unpaid utility bills of AFDC recipients. Memorandum for Defendants Berger and Toia, filed August 13, 1976.

This Court agrees with the plaintiffs that *Hagans* is distinguishable and that a utility shut-off may satisfy the eligibility requirements for emergency assistance within the intendment of the federal and State programs.

The courts of New York have construed the terms "emergency need" to mean that which is unexpected and irregular and not to indicate the anticipated expenses of daily life. *See, e. g., Baumes v. Lavine, supra; Adkin v. Berger, supra; Dunn v. Bates, supra.* Application of such a standard calls for a distinction between need arising from nonpayment which is purposeful or due to the negligent misapplication of regular allocations—that which could be anticipated and avoided—and the need arising from extraordinary circumstances not attributable to the fault of the recipient. Need in the latter category encompasses inordinately large bills resulting from error on the part of the utility such as underbilling or improper crossing of wires or unlawful "tapping" of currents.

Insofar as such circumstances are not due to the activity or within the actual or constructive knowledge of the recipient, such incidents are clearly unexpected and could not be budgeted for, and it would be unfair to hold the recipient accountable for emergency need resulting therefrom.[7] Whether the individual circumstances indicate that a recipient was involved, knew or should reasonably have known of the impropriety or error is a determination for the social services agency upon hearing the claim for emergency assistance. Certainly there are some utility shut-offs which are not genuinely unexpected and sudden events, which have explanations implicating the recipients, thereby rendering them ineligible for emergency assistance. Just as certainly there are others which do leave recipients in dire need and deserving of emergency aid. In the latter, the true crises circumstances, emergency aid is justified and recoupment of advances is not. The genuine emergency need is clearly distinguishable from the need for additional aid to meet regular and anticipated rent charges, *see Hagans v.*

---

**7.** This Court cannot countenance defendants' contention that because of the generally widespread knowledge that Con Edison makes frequent billing mistakes and the common practice of illegal "tapping" of a customer's current by unauthorized persons, the exceptionally large utility bills "should have been, in a certain sense, anticipated" by the recipients and therefore can be regarded as "merely the result of the demands of everyday life and thus cannot be categorized as requiring emergency assistance." Defendants' Memorandum, *supra,* at 7. Although this theory would seem to concede a standard for emergency assistance based upon need which cannot be anticipated or resulting from the demands of everyday life, the defendants' suggested application of such a standard is simply unreasonable and unfair.

*Berger, supra,* or the need to meet additional expenses that are attributable to or should have been anticipated by the recipient.[8]

In conclusion, the Social Security Act and regulations authorize emergency assistance apart from allocations for regular need in order to accommodate specific exigencies. Thus, this Court holds that a participant state cannot automatically exclude from eligibility for emergency assistance under its plan a category of need which is contemplated by the federal program. The state must at least inquire whether the particular exigency presents a true emergency situation, *i. e.,* whether it was not and should not have been expected by nor attributable to the recipient. If the circumstances do not satisfy such a test for emergency need, then the alternative procedure of recoupable advances under section 372.2(a)(5) would not offend the federal emergency assistance plan.

Accordingly, it is ordered that insofar as 18 NYCRR §§ 352.7(g)(5) and 372.2(a)(7) automatically deny emergency assistance to individuals threatened with utility shut-offs, they are declared null and void.[9]

Submit judgment in conformity herewith.

---

**8.** An alternative to increased assistance payments recognized by the *Hagans* court was the availability of substitute shelter or "welfare hotels." There is no analogous alternative available to plaintiffs in this case. Even if they *relocated to facilities which provide utilities,* once they are branded as delinquent customers by Con Edison, it is likely that in the future they will be denied service should they try to resume it. Moreover, unlike housing, there is no alternative source of utilities for customers of Con Edison.

**9.** This Court need not consider plaintiffs' request for monetary damages because it does not determine the merits of the individual requests for emergency assistance. Whether the plaintiffs are entitled to emergency assistance is a matter for the social services agency; that they should be eligible for entitlement under the Social Security Act is established by this decision. Furthermore, this Court expresses grave doubts as to whether the plaintiffs could recover monetary damages from the state and its officials under the ruling in *Edelman v. Jordan, supra,* or from the city agency and its officials under the recent decision in *Monell v. Department of Social Services, supra.*