**Joseph COPELAND, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Cesar A. PERALES, as Commissioner of the New York State Department of Social Services, and Ruth Brandwein, as Commissioner of the Suffolk County Department of Social Services, Defendants.**

**No. CV 90–1742.**

United States District Court,
E.D. New York.

Feb. 3, 1992.

Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc. by Peter Vollmer, Bay Shore, N.Y., for plaintiff.

Robert Abrams, New York State Atty. Gen. by Carol Schechter, New York City, for defendant Perales.

E. Thomas Boyle, Suffolk County Atty. by Jeltje DeJong, Hauppauge, N.Y., for defendant Brandwein.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Joseph Copeland ("Copeland" or "plaintiff") brings the above-referenced action against Cesar A. Perales as Commis-

sioner of the New York State Department of Social Services and Ruth Brandwein as Commissioner of the Suffolk County Department of Social Services (collectively "defendants"). Copeland challenges defendants' alleged policy and practice of reducing the amount of state-mandated emergency energy assistance granted pursuant to § 131-s of the New York Social Services Law (§ 131-s") by the amount of payment granted pursuant to the federal Low-Income Home Energy Assistance Program ("LIHEAP"). Copeland seeks an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and preliminarily enjoining defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure from considering the benefits granted under the state Home Energy Assistance Program ("HEAP") as income or resources when determining eligibility for benefits to prevent a utility shut-off under § 131-s.

Proposed plaintiff-intervenor Virginia Sharp ("Sharp") seeks to bring an identical action against the same defendants. Sharp now moves to intervene in this action. That motion is unopposed.

For the reasons stated below, Sharp's motion to intervene is granted, Copeland's motion for class certification is granted, and Copeland's motion for a preliminary injunction is denied.

## I. BACKGROUND

LIHEAP, authorized under the Low-Income Home Energy Assistance Act of 1981, 42 U.S.C. § 8621 *et seq.*, is designed to provide regular and emergency energy assistance benefits to ensure that eligible low-income households do not suffer an interruption of energy service. New York State participates in LIHEAP. HEAP is the state program funded under LIHEAP. The New York State Department of Social Services (the "State") regulates HEAP state-wide, while the Suffolk County Department of Social Services (the "County") administers the program locally. *See* N.Y.Soc.Serv.Law § 97 (McKinney Supp. 1986).

HEAP benefits are available to applicants on both regular and emergency bases. To be eligible for emergency HEAP benefits, an applicant must show, *inter alia*, that a utility service is scheduled for termination within seven days. 18 NYCRR § 393.4(d)(iii). States are required to coordinate their activities under LIHEAP with all similar and related programs, including state programs designed to avert utility service termination. Section 131-s authorizes such a program.

Pursuant to § 131-s, the State must provide utility arrearage payments to ensure continued utility service to households threatened with service termination. Because the funding source is not specifically designated in legislation, several programs are utilized to fund these arrearage payments. HEAP is one such program. According to plaintiff, it is the State's policy and practice to use HEAP funds to make the utility payments required under §˙131-s to avert service termination. Such HEAP payments were made to the Long Island Lighting Company ("LILCO") on behalf of Copeland in July of 1989, and on behalf of Sharp in August of 1990.

The use of HEAP funds in conjunction with other programs that assist households is limited by both federal and state law. Specifically, 42 U.S.C. § 8624(f)(1) states that HEAP payments "shall not be considered income or resources of such household (or any member thereof) for any purpose under any Federal or State law, including any law relating to taxation, food stamps, public assistance, or welfare programs." § 8624(f)(1). The relevant state law provision is virtually identical. *See* N.Y.Soc.Serv.Law § 97(3) (McKinney Supp. 1992).

Plaintiff claims that defendants' policy and practice of using HEAP funds in place of emergency public assistance otherwise available under § 131-s violates the federal and state law outlined above. Copeland further alleges that defendants' policy and practice (1) reduces the amount of state-mandated emergency energy assistance by the amount of the HEAP payment, (2) fails to provide the emergency energy assist-

ance required to pay the residual arrears which remain after the HEAP payments are credited, and (3) fails to remove the threat of service termination. Copeland seeks, *inter alia*, declaratory and injunctive relief and a judgment against defendants in the amount representing energy arrears alleged to have been improperly withheld due to defendants' policy and practice with respect to the HEAP funds.

Currently before the Court are Copeland's combined motion for class certification pursuant to Rule 23(a) or (b)(2) of the Federal Rules of Civil Procedure, and for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure as well as Sharp's motion to intervene pursuant to Rule 24(a) or (b) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. *Motion to Intervene*

As stated, Sharp seeks to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. The motion is unopposed. The Court determines Sharp's motion pursuant to Rule 24(b). Intervention under Rule 24(b) is appropriate "when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the rights of the original parties." Fed. R.Civ.P. 24(b).

An examination of Sharp's complaint reveals that the claims therein are virtually identical to those found in Copeland's complaint: Both name the same defendants, allege the same violations of federal and state law, propose the same plaintiff class, and seek the same relief. Indeed, Sharp's complaint is modeled after, and its language virtually identical to, Copeland's complaint. Clearly then, Sharp's and Copeland's claims share common questions of both law and fact.

Further, Sharp and Copeland are represented by the same counsel, and neither Copeland nor the defendants have opposed Sharp's motion to intervene. Accordingly,

it is apparent that permitting Sharp to intervene will not unduly delay or prejudice the rights of the original parties.

For these reasons, Sharp's unopposed motion to intervene is granted pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

### B. *Class Certification*

The proposed plaintiff class consists of "all Suffolk County applicants for emergency energy assistance who since October 1, 1988 have been or may be denied, in whole or in part, any energy assistance under New York Social Services Law § 131-s due to the receipt of HEAP benefits[.]" Notice of Motion for Class Certification and Preliminary Injunction at 1. Class certification requires that:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law and fact common to the class,

(3) the claims of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

Moreover, a class action must be maintainable under one of the criteria set forth in Rule 23(b) of the Federal Rules of Civil Procedure. Plaintiff alleges that this action is maintainable as a Rule 23(b)(2) action, *viz*, one in which defendants have acted "on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). That is not disputed by defendants. Likewise, defendants do not dispute that the proposed class meets the tests for "numerosity" and "adequate representation." The Court agrees. Defendants do, however, contest the proposed class' satisfaction of the "common questions" and "typicality" requirements, which are addressed below seriatim. Finally, defendants argue that class certification is unnecessary and unwarranted.

### 1. Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the members of the class. In the case at bar, plaintiff's proposed class includes *all* Suffolk County applicants for emergency energy assistance whose HEAP benefits detracted from their entitlements under § 131-s. The County correctly notes, however, that not all applicants are treated the same way under § 131-s. Section 131-s provides that public assistance applicants may qualify for payments of arrears "during a period of up to, but not exceeding, four months immediately preceding the month of application," while applicants already receiving public assistance may be entitled to payment of arrears "for the most recent four months." § 131-s(1), (2). While Copeland falls into the former category, many members of the proposed class, Sharp included, are believed to fall into the latter. Because, the County alleges, this results in two distinct fact patterns, each with its own relevant statutory provision, plaintiff's proposed class is not defined with sufficient particularity to generate questions of law or fact common to all class members.

However, the distinction between § 131-s(1) and § 131-s(2) applicants means only that, in the absence of a HEAP payment, although some class members would be entitled to retroactive relief of up to four months' arrears, others would be entitled to the full four months. In other words, the distinction affects the amount, but not the fact, of retroactive relief due any particular plaintiff. If, in fact, defendants'

policy and practice regarding use of HEAP funds is improper, *every* class member will be entitled to *some* retroactive relief.

Essentially, all members of the proposed plaintiff class claim entitlement to benefits under § 131-s which were supplanted, either in whole or in part, by defendants' alleged policy and practice; it is defendants' course of conduct that is called into question. Such an alleged "common course of conduct" is sufficient to satisfy the "common questions" requirement in this Circuit. *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Moreover, despite the distinction between public assistance recipients and public assistance applicants, the Court finds that numerous questions of fact [1] and law [2] remain common to all members of the proposed class. Thus, the County's claim to the contrary notwithstanding, the proposed class is sufficiently definite to enable the Court to determine if a particular individual is a member of the proposed class. *See In re Gulf Oil/Cities Serv. Tender Offer Litigation*, 112 F.R.D. 383, 386 (S.D.N.Y.1986) (finding commonality requirement was satisfied, even though not all class members were identically situated, since questions of law and fact which linked the members of the class were substantially related to the resolution of the action) (citation omitted).

Therefore, this Court concludes that the proposed plaintiff class satisfies the "common questions" requirement for class certification.

---

1. Common questions of fact include:

    1. Do defendants apply HEAP benefits to satisfy their obligation to provide emergency energy assistance under § 131-s?

    2. Do defendants deduct the amount of the HEAP benefits from the amount of additional emergency energy assistance provided under § 131-s?

    3. If and when defendants issue HEAP funds in partial payment of utility arrears, does this prevent a publicly regulated utility company from terminating service?

    4. If, and when, defendants make a partial HEAP payment, is anything else due a recipient under § 131-s(1) or (2)?

2. Common questions of law include:

    1. Do the Social Security Act and New York's Social Services Law, and the respective regulations promulgated thereunder, permit the deduction of HEAP benefits in the computation of emergency energy assistance under § 131-s?

    2. Do the Social Security Act and New York's Social Services Law, and the respective regulations promulgated thereunder, permit the use of HEAP funds under § 131-s at all?

    3. Does the defendants' alleged use of HEAP funds, as it relates to § 131-s, violate 42 U.S.C. § 1983?

    4. Does the defendants' alleged use of HEAP funds, as it relates to § 131-s, violate the New York State Constitution?

## 2. Typicality

For a suit to be certified as a class action, the claims of the named class representatives must be typical of the proposed class' members. Fed.R.Civ.P. 23(a)(3). The claims of the class representative are considered typical when they arise from the same course of conduct that gives rise to the claims of the other class members and are based on the same legal theory. *See Michaels v. Ambassador Group Inc.*, 110 F.R.D. 84, 88–89 (E.D.N.Y. 1986). *See also Fisher v. Plessey Co., Inc.*, 103 F.R.D. 150, 159 (S.D.N.Y.1984). The State alleges that Copeland's claims are not typical of the proposed plaintiff class, and puts forth two arguments to support this contention. First, the State claims that Copeland is not currently faced with a utility shut-off. The State concludes from this, which is itself a matter in dispute,[3] that Copeland is not representative, nor are his claims typical, of a class whose members are allegedly threatened with utility termination.

This Court finds that the State has misconstrued the underlying nature of the present action. The proposed class consists of members who *were*, at one time, threatened with utility termination, and who, accordingly, sought relief in the form of assistance from the County. Their claim alleges an improper use of federal HEAP funds on the part of the County in providing that relief, a practice that plaintiff claims deprived proposed class members of their full entitlements under § 131–s. Accordingly, it is the deprivation of entitlements under § 131–s, and *not* the threat of utility termination that binds the proposed class members together and that makes Copeland's claim one which is typical of the class.

Second, the State points out that applicants for § 131–s assistance who have made alternative payment arrangements with a utility company are not eligible for § 131–s benefits. *See* § 131–s(1), (2). The State claims that Copeland has worked out a deferred payment agreement with LILCO, and therefore is not eligible for § 131–s benefits. Accordingly, the State alleges, Copeland's claims are not typical of a class whose members claim entitlement to emergency energy assistance under § 131–s.

Again, the State has missed the mark. To be a member of the proposed class, one need have suffered only from an improper use of HEAP funds at the time of entitlement to § 131–s benefits; one need not *currently* be entitled to § 131–s benefits. The proposed class members are bound together by their claim of entitlement to more benefits under § 131–s than their local Department of Social Services has allowed, not by any *current* claim of entitlement to § 131–s benefits. For "typicality" purposes, this Court must examine the situation of proposed class members at the time they *were* entitled to § 131–s benefits; whether or not their present financial situation entitles them to such benefits currently is beyond the scope of this opinion. Therefore, the State's allegation that Copeland's claim is not typical of the proposed class because he is not *currently* entitled to § 131–s benefits is without merit.

Furthermore, even if this Court were to find that Copeland's claims were not typical of the proposed class for the reasons put forth by the State, the granting of Sharp's motion to intervene renders State's contentions moot. According to Sharp's unopposed motion and its supporting papers, Sharp is currently in danger of utility service termination and has been unable to reach a deferred payment agreement. Thus, as plaintiff-intervenor, Sharp is surely one whose claims are typical of

---

**3.** The Court notes in passing that it is not convinced that Copeland does, in fact, have a deferred payment agreement with LILCO. Such an agreement is defined by the New York State Public Service Commission as "a written agreement . . . signed by both the utility and the customer or applicant. . . ." 16 NYCRR 11.-10(1). Copeland's so-called agreement with LILCO was oral, and its terms were outlined over the telephone—neither party signed anything. Moreover, Copeland has already defaulted on the payment of his arrears. Thus, the current status of Copeland's alleged agreement with LILCO, if, in fact it ever existed, remains an open question.

the proposed class, even by the State's standards. Accordingly, the proposed class satisfies the "typicality" requirement of Rule 23(a)(3).

For the reasons set forth above, this Court finds that the proposed class meets all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and is maintainable under Rule 23(b)(2).

### 3. Necessity of Certifying the Proposed Class

■ Defendants maintain that class certification is unnecessary in this case. To support this position, they cite *Davis v. Smith*, 431 F.Supp. 1206 (S.D.N.Y.1977), *aff'd*, 607 F.2d 535 (2d Cir.1978), where a district court in this circuit found that "[a]lthough plaintiffs satisfy the requirements of [Rule 23], certification of class action status is unnecessary and would not provide a superior method of adjudicating the issues ..." *Davis*, 431 F.Supp. at 1209. Where plaintiffs have sought only declaratory and injunctive relief against government officials, some courts in this circuit have held class certification to be an unnecessary formality, inasmuch as the effects of a plaintiff victory over government officials can be expected to inure to the benefit of all proposed class members. *See, e.g., Galvan v. Levine*, 490 F.2d 1255, 1261–62 (2d Cir.1973) (finding "monetary relief ... was properly declined" by the district court), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Davis*, 431 F.Supp. at 1209.

Defendants would have this Court apply the *Davis* rationale to the case at bar, drawing attention to the presence of government officials and the nature of the relief sought. County's Memorandum of Law In Opposition to Plaintiff's Motions for Class Certification and Preliminary Injunction at 12. However, the relief sought by the proposed plaintiff class is not purely declaratory and injunctive in nature: The class members, if their allegations are correct, can be made whole only by the restoration of benefits improperly withheld as a result of defendants' alleged policy and practice. In sum, the members of the proposed plaintiff class seek, in part, retroactive monetary relief. As stated in the County's own papers, "Plaintiff's alleged damages are money damages." Affirmation of Jeltje DeJong in Opposition to Motion for Class Certification and Preliminary Injunction at 4.

Thus, the present case is distinguishable from *Davis* and *Galvan*, where no retroactive monetary relief was at issue. A complete reading of the section of *Davis* quoted above reveals just how integral this fact was to the holding:

> Although plaintiffs satisfy the requirements of [Rule 23], certification of class action status is unnecessary and would not provide a superior method of adjudicating the issues *since retroactive monetary relief cannot be awarded under the facts of this case*, and since it is clear that the prospective relief will inure to the benefit of all the requested class members.

*Davis*, 431 F.Supp. at 1209 (citations omitted) (emphasis added). Thus, defendants' reliance on *Davis* and *Galvan* is misplaced.

Accordingly, Copeland's motion for class certification is hereby granted, and the proposed class as defined by plaintiff, *see* Notice of Motion for Class Certification and Preliminary Injunction at 1, is hereby certified. Copeland and Sharp are certified as class representatives. Within thirty days of entry of this order, plaintiffs are directed to submit to the Court a proposed form of notice to the class members pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure. Defendants may file a response to plaintiffs' proposed form of notice within ten days thereafter.

### C. *Preliminary Injunction*

■ In order to obtain a preliminary injunction, plaintiff must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719

F.2d 42, 45 (2d Cir.1983) (quoting *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 71 (2d Cir.1979) (per curiam)).

It is beyond question that utility service to residences is a necessity of modern-day life, especially during the winter months. Further, a showing of the deprivation of such a necessity will ordinarily constitute irreparable harm. *See Ellender v. Schweiker,* 550 F.Supp. 1348, 1358 (S.D.N.Y.1982). Plaintiff alleges that defendants' policy and practice of paying only part of the four month arrears of § 131–s applicants fails to avert service termination.[4] Plaintiff argues that because the plaintiff class remains threatened with utility service termination after partial HEAP payments are made on behalf of the class members, the failure to preliminarily enjoin defendants' alleged policy and practice will result in irreparable harm.

Pursuant to New York State's HEAP plan, Uniform Vendor Agreements are mandated when HEAP payments are made directly to home energy suppliers. *See* New York State HEAP Plan Manual at 94. Such agreements require home energy suppliers to continue to provide or to restore utility service for a minimum period of thirty days from the date of notification that a HEAP payment will be made on behalf of an eligible household. Any HEAP payment, even a partial HEAP payment, is enough, according to the HEAP Manual, to extend service for thirty days. This thirty day grace period gives the service provider and the customer sufficient time to work out a deferred payment agreement if one is feasible, and removes the immediate threat of service termination. Although the County's own search failed to locate the specific Uniform Vendor Agreement it claims to have made with LILCO, several letters clearly indicate that both LILCO and defendants believe and act as though a Uniform Vendor Agreement, or its functional equivalent, is in place.

By letter dated August 22, 1988, Peter A. Bradford, Chairman of the New York State Public Service Commission, informed the State that

> each year the Commission has directed utilities to continue or restore a customer's utility service for at least thirty days each time the utility received, or is notified it would receive, a regular or an emergency HEAP payment on behalf of the customer.... Thus, while an emergency HEAP payment will no longer be equal to up to four months of utility arrears, we will still require utilities to continue or to restore service for 30 days and to attempt to negotiate a deferred payment agreement for any remaining balance.

A letter, dated December 2, 1988, containing virtually identical language was sent by the State to LILCO. Although LILCO's response letter, dated December 23, 1988, does not explicitly recognize the thirty day grace period, it does give "assurance that LILCO personnel are aware of the Company's continuing obligation...." If LILCO intended to ignore the thirty day grace period, using this language would be a strange way of reserving that option. Moreover, plaintiff has failed to make the Court aware of any utility service termination, by LILCO or any other utility company, that has taken place within thirty days of a HEAP payment, partial or otherwise.

Copeland claims that, in the absence of a Uniform Vendor Agreement with LILCO, defendants' policy concerning the thirty day grace period, as stated in the aforementioned letters, is not binding upon LILCO. Moreover, plaintiff argues that defendants' policy is not valid under the New York State Administrative Procedure Act ("SAPA") because, *inter alia,* the rule implementing the policy had not been published in the New York State Register thirty days prior to implementation. *See* SAPA § 202.2(a). Accordingly, Copeland

---

4. The County correctly points out that Copeland, as a non-public assistance applicant, is entitled, pursuant to § 131–s(1) only to a period of up to four months arrears of his utility bill. Thus, the County concludes that plaintiff's "entire cause of action is based upon a mistake of law." County's Memorandum of Law In Opposition at 7. The Court chooses not to decide this issue at this stage of the action.

asserts that under these circumstances LILCO has the legal right to terminate service at any time.

However, the issue is not whether defendants' stated policy regarding the thirty day grace period complies with regulatory formalities. The Court notes that Congress intended that states participating in LIHEAP "be provided with the broadest possible latitude in the use of block grant funds and be free from all but the most minimal and necessary federal administration and regulatory direction." Legislative History Pub.L. No. 97–35, p. 909, 1981 U.S.C.C.A.N., Vol. 2, pp. 396, 933. Rather, the issue is whether the plaintiff class faces irreparable harm in the form of service termination if defendants' practices are not immediately enjoined. Insofar as LILCO's policy and practice is to continue or restore service for at least thirty days upon receipt of any HEAP payment, plaintiff has failed to show irreparable harm.

Further, Copeland's contention that defendants' policy and practice does not avert, but merely postpones, service termination by thirty days is without merit. If plaintiff is looking for an energy assistance program that averts service termination forever, he will be left fluttering in theoretical hyperspace—no program ventures to offer such protection. Because Copeland has failed to demonstrate irreparable harm, his motion for preliminary injunction is hereby denied.

### III. CONCLUSION

For the aforesaid reasons, Sharp's motion to intervene is granted, Copeland's motion for class certification is granted, and Copeland's motion for preliminary injunction is hereby denied.

SO ORDERED.