607 F.2d 535
 Priscilla DAVIS, Individually and on behalf of her minor
daughter Robyn Gray, and on behalf of all others
similarly situated, Plaintiffs-Appellees,
and
Rosie Vasquez, Gail Warren, Geneva Warren, Luis Malagon and
Harriet Demitroff, Plaintiffs-Intervenors-Appellees,
v.
J. Henry SMITH, Individually and as Commissioner of the New
York City Department of Social Services, James Dumpson,
Individually and as former Commissioner of the New York City
Department of Social Services, Charles Bates, Individually
and as Commissioner of the Westchester County Department of
Social Services, Phillip L. Toia, Individually and as
Commissioner of the New York State Department of Social
Services, and Stephen L. Berger, Individually and as former
Commissioner of the New York State Department of Social
Services, Defendants-Appellants.
 Nos. 877, 1005 and 1006, Dockets 77-7541, 77-7583 and 77-7597.
 United States Court of Appeals,
Second Circuit.
 Argued April 24, 1978.
Decided Aug. 11, 1978.
Petition for rehearing granted February 23, 1979.
 
 Constance F. Carden, The Legal Aid Society, New York City (Kalman Finkel, Atty. in Charge, Civ. Div., John E. Kirklin, Director of Litigation, The Legal Aid Society, New York City, and Martin A. Schwartz and Eileen Landau, Westchester Legal Services, Inc., Hartsdale, N. Y., on the brief), for plaintiffs-appellees and plaintiffs-intervenors-appellees.
 A. Seth Greenwald, Asst. Atty. Gen., State of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen., State of N. Y., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for defendants-appellants.
 Before LUMBARD, MULLIGAN and TIMBERS, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 We have before us cross-appeals from a judgment entered May 10, 1977 in the Southern District of New York, Charles H. Tenney, District Judge, 431 F.Supp. 1206. On defendants' appeal the question presented is whether the district court correctly enjoined implementation of two regulations of the New York State Department of Social Services to the extent they are inconsistent with the Social Security Act. On plaintiffs' cross-appeal the question presented is whether the district court correctly denied plaintiffs' motion for class action certification for the reasons that retroactive monetary relief cannot be awarded and the prospective effects of declaratory and injunctive relief will inure to the benefit of all proposed members of the class.
 
 
 2
 We hold that the district court correctly enjoined implementation of the state regulations and correctly denied class action certification. We affirm.
 
 I.
 
 3
 The facts[1] are simple, straightforward and undisputed. Both sides below moved for summary judgment on the merits.[2]
 
 
 4
 Plaintiffs[3] are recipients of grants under the Aid to Families with Dependent Children Program (AFDC) of the Social Security Act. For a variety of reasons beyond their control, plaintiffs were unable to pay their electric utility bills.[4] Accordingly, they either were threatened with a discontinuance of their utilities service or found their services shut off. To forestall discontinuance or to restore services, all sought emergency assistance from their local Department of Social Services center.
 
 
 5
 New York State participates in the federal emergency assistance program, 42 U.S.C. §§ 601 and 606(e) (1970 & Supp. V 1975), which awards non-recoverable[5] grants to AFDC recipients under emergency circumstances. However, pursuant to two New York State regulations, 18 N.Y.Code, Rules & Regs. §§ 352.7(g)(5) (1978)[6] and 372.2(a)(2) (1975)[7] (the regulations), aid is available to those who need the funds to pay utility bills only on the condition that they agree to have the amount which is advanced to them deducted from their future AFDC grants. The regulations in essence exclude plaintiffs from eligibility for the emergency assistance program and instead offer them an advance subject to a recoupment plan. Plaintiffs were compelled to agree to this recoupment plan in order to receive an advance.
 
 
 6
 Plaintiffs, in their action in the district court pursuant to 42 U.S.C. § 1983 (1970) and 28 U.S.C. § 1343(3) (1970), challenged the validity of the two New York State regulations. They contended that the regulations violated their constitutional rights under the due process and equal protection clauses of the Fourteenth Amendment and their statutory rights under the Social Security Act, 42 U.S.C. §§ 601, 602(a)(7), 602(a)(10), 606(a), and 606(e) (1970 & Supp. V 1975).
 
 
 7
 From "the plethora of motions" with which the district court was inundated, 431 F.Supp. at 1208, there emerged the opinion of Judge Tenney and the judgment entered thereon, from which both sides have appealed.
 
 II.
 
 8
 The first legal issue presented is whether a state participating in the federal emergency assistance program may exclude automatically from eligibility persons who need such assistance to pay utility bills. Specifically, the issue here is whether, in enacting the emergency assistance program, Congress intended to extend relief to persons in the position of plaintiffs.
 
 
 9
 We have held that a state which participates in the federal emergency assistance program may not define eligibility more restrictively than the Social Security Act. Lynch v. Philbrook, 550 F.2d 793, 795 (2 Cir. 1977) (grants to AFDC families); Hagans v. Berger, 536 F.2d 525, 532 (2 Cir. 1976) (rent). We also have held that the emergency assistance program does not require the award of a non-recoverable grant to AFDC recipients "to remedy the anticipated demands created as the result of everyday life," such as "regular monthly rent and utility bills." Hagans v. Berger, supra, 536 F.2d at 532, citing Baumes v. Lavine, 38 N.Y.2d 296, 304, 379 N.Y.S.2d 760, 767, 342 N.E.2d 543, 548 (1975). And we have held that it is within the discretion of a state under the Act to deny requests for non-recoverable grants when recipients "diverted shelter allowances to other non-emergency purposes and became delinquent in rental payments." 536 F.2d at 528. It is the purpose of the emergency assistance plan to assist recipients faced with misfortune beyond their control, not to save them from their own irresponsibility.
 
 
 10
 Defendants, however, have interpreted Hagans as authority for automatically denying all requests for emergency assistance when the funds are to be used to pay utility bills. This extension of Hagans is unwarranted and runs afoul of the intent of Congress in allowing for emergency assistance, as the district court correctly held. 431 F.Supp. at 1211-12. Congress specifically provided that "emergency assistance to needy families with children" was "to provide living arrangements in a home for such child(ren)" at times when factors beyond the control of those entrusted with their care drain them of the resources normally allocated to maintain a household. 42 U.S.C. § 606(e)(1).
 
 
 11
 Moreover, a shut-off of utilities was one event for which Congress specifically considered it necessary to provide appropriate "living arrangements". In its report on the bill providing for the emergency assistance program, the Senate Committee on Finance addressed precisely the matter of turning off utilities:
 
 
 12
 "The committee understands that the process of determining AFDC eligibility and authorizing payments frequently precludes the meeting of emergency needs when a crisis occurs. In the event of eviction, Or when utilities are turned off, or when an alcoholic parent leaves children without food, immediate action is necessary. It frequently is unavailable under State programs today. When a child is suddenly deprived of his parents by their accidental death Or when the agency finds that conditions in home are contrary to the child's welfare, new arrangements and court referrals may have to be made.
 
 
 13
 To encourage public welfare agencies to move promptly and with maximum effectiveness in such situations, the bill contains an offer to the States of 50-percent participation in emergency assistance payments and the usual 75-percent participation in social services that may be provided. . . . The eligible families involved are those with children under 21 who either are, or have recently been, living with close relatives. The families . . . must be without any available resources and the payment or service must be necessary in order to meet an immediate need that would not otherwise be met.
 
 
 14
 Assistance might be in any form money, medical aid, Payment of rent or utilities, orders from food or clothing stores, etc." S.Rep. No. 744, 90th Cong., 1st Sess. 165-66 Reprinted in (1967) U.S.Code Cong. & Ad.News 2834, 3002-03 (emphasis added).
 
 
 15
 Congress appears to have contemplated particularized scrutiny of individual cases to determine whether the recipient is in an emergency situation or whether the crisis is of his own making. While the details of such determinations necessarily must be left largely to the discretion of the states, Cf. Hagans v. Berger, supra, 536 F.2d at 527-28, reasoned determinations must be made.
 
 
 16
 The fact that the purpose for which an applicant seeks funds is to pay a utility bill in order to prevent a shut-off would be insufficient, without more,[8] to determine whether the applicant is in a true emergency or in a crisis of his own making. An emergency may occur when many unanticipated expenses are incurred at about the same time.[9] It would be arbitrary to say that a status of emergency depends on which of many expenses are incurred after other expenses have exhausted one's resources. An emergency may also be a consequence of a single bill from a creditor who has made a mistake.[10] If relief is granted when other creditors err, the state must give a reasonable explanation why it will not grant emergency assistance when the creditor is a utility company. Hence unless the state can show a rational, necessary connection between situations on the one hand where the applicant's need crystallizes upon arrival of a utility bill and situations on the other hand which do not constitute emergencies, the state must proceed on a case by case basis to determine whether an emergency exists and, if so, whether it was avoidable by the applicant. In the instant case the state did not come forth with such an explanation before Judge Tenney.
 
 
 17
 On appeal for the first time defendants have attempted to establish such a connection. They assert that, because of procedures attendant upon a shut-off, a utility shut-off never is an emergency in the State of New York. Defendants point to regulations of the New York Public Service Commission (PSC), 16 N.Y.Code, Rules & Regs. § 11.1-2 (1973), which provide for hearing and determination of complaints about disputed bills. Defendants say that the PSC "usually will" halt service terminations during a PSC investigation and hearing.
 
 
 18
 Aside from the fact that this contention is being made for the first time on appeal, we find it unpersuasive for at least two other reasons. First, it does not address itself to the problem referred to above of simultaneous, unanticipated, yet wholly legitimate, expenses. Second, it is wide of the mark to suggest replacing a federal remedy which will Always assist those determined to be in emergency situations with a program which Usually will assist people regardless of their need.
 
 
 19
 We hold, under this section of our opinion, that a state participating in the federal emergency assistance program may not automatically exclude persons from eligibility for the program because they need the emergency assistance to pay utility bills. We therefore affirm the declaratory and injunctive relief granted by the district court with respect to the two regulations involved. We express no opinion as to whether any of plaintiffs' situations constitute an emergency such as to entitle them to emergency assistance. The standards governing such determinations, as well as the determinations, must be made by state authorities in the first instance. We hold only that reasoned determinations must be made in each case.
 
 III.
 
 20
 Plaintiffs' cross-appeal presents the legal question whether an action should be certified as a class action even though retroactive monetary relief cannot be awarded and the prospective effects of declaratory and injunctive relief will inure to the benefit of all proposed members of the class.
 
 
 21
 Plaintiffs sought class action status under Fed.R.Civ.P. 23(b)(2) and 23(c) for the class composed of "all New York State residents who were, are or will be denied full assistance to prevent a loss of utility service and/or who have had, are having or will have their grants reduced, terminated, suspended or denied solely because of the enforcement of §§ 352.7(g)(5) and 372.2(a)(2) of Title 18 of the New York Code of Rules and Regulations." Plaintiffs did not seek retroactive monetary relief because welfare benefits may not be awarded retroactively. Edelman v. Jordan, 415 U.S. 651, 668-69 (1974). They sought only the prospective benefits which would inure as the result of such declaratory and injunctive relief that might be granted.
 
 
 22
 We have held that one seeking class action status under Rule 23(b)(2) and 23(c) not only must meet the minimum prerequisites for a class action under Rule 23(a), but also must present additional reasons for obtaining certification of the class under 23(b) and 23(c). Galvan v. Levine, 490 F.2d 1255, 1261 (2 Cir. 1973) (Friendly, J.). Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification. Rush v. Smith, 437 F.Supp. 576, 577 (S.D.N.Y.1977); McGraw v. Berger, 410 F.Supp. 1042, 1045 (S.D.N.Y.), Aff'd, 537 F.2d 719 (2 Cir. 1976), Cert. denied, 429 U.S. 1095 (1977); Cf. Galvan v. Levine, supra, 490 F.2d at 1261-62. The district court held that the prospective effects of its judgment here would inure adequately to the benefit of all proposed class members and that class certification therefore was not appropriate. 431 F.Supp. at 1209. We agree.
 
 
 23
 Affirmed.
 
 ON PETITION FOR REHEARING
 
 24
 In an order and opinion dated August 11, 1978 we affirmed the judgment of the district court (Tenney, J.) 431 F.Supp. 1206 (S.D.N.Y.) declaring invalid certain regulations of the New York State Department of Social Services. Appellants have moved for rehearing, arguing that our action is inconsistent with the Supreme Court's decision in Quern v. Mandley, 436 U.S. 725 (1978). Plaintiffs-appellees dispute this claim. Though we express no view on which position is correct, we grant the motion for rehearing, recall our earlier order, and remand the case to the district court for further consideration in light of Quern v. Mandley.
 
 
 25
 TIMBERS, Circuit Judge, dissenting from grant of petition for rehearing:
 
 
 26
 This is a striking example of the mischief that results when we brush aside a controlling rule and reach out to grant a "petition for rehearing" which never has been filed and to which appellees never have been afforded an opportunity to respond all at the belated behest of a government agency which continues to ignore our rules.
 
 
 27
 Since the Supreme Court undoubtedly will be requested to review this matter in due course, I think it is important to point out Now the infirmity in the jurisdictional underpinning of today's order of our Court purporting to grant a nonexistent "petition for rehearing" without complying with the most basic provisions of F.R.A.P. 40(a).
 
 
 28
 The judgment and opinion of our Court here involved were filed on August 11, 1978, Davis v. Smith, 607 F.2d 535 (2 Cir. 1978), in which we unanimously affirmed the judgment of the district court entered on the opinion of Charles H. Tenney, District Judge, 431 F.Supp. 1206 (S.D.N.Y.1977), which declared invalid certain regulations of the New York State Department of Social Services.
 
 
 29
 Although the judgment and opinion of our Court were filed on August 11, 1978, the State Attorney General's office on behalf of appellants waited until four weeks thereafter before moving For an extension of time to file a petition for rehearing. Under F.R.A.P. 40(a), a petition for rehearing is required to be filed "within 14 days after entry of judgment unless the time is shortened or enlarged by order."[1] On September 25, 1978, we entered an order which granted "leave to file a petition for rehearing." No such petition for rehearing has ever been filed.
 
 
 30
 Apparently the majority treats the State's motion for an extension of time to file a petition as the petition itself. Aside from the fact that the rule makes no provision for so doing, the procedure which the majority is sanctioning by today's order has dispensed with two integral provisions of F.R.A.P. 40(a):[2]
 
 
 31
 (1) "The petition shall state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended and shall contain such argument in support of the petition as the petitioner desires to present."
 
 
 32
 (2) "No answer to a petition for rehearing will be received unless requested by the court, But a petition for rehearing will ordinarily not be granted in the absence of such a request." (emphasis added).
 
 
 33
 Referring first to item (2) above, it is undisputed that appellees never have been requested to answer the State's "petition for rehearing" which the majority grants by today's order, even construing the State's motion for an extension of time as the petition itself. Cutting off appellees' right to respond not only is grossly unfair to appellees and their counsel; it deprives the Court of what may very well be critical information which may cast serious doubt on the propriety of granting this so-called "petition for rehearing".
 
 
 34
 Referring to item (1) above requiring particularity in the statement of law and fact relied on, the most that can be gleaned from the State's motion for extension of time to file a petition for rehearing (no petition for rehearing ever having been filed), is that (A) somehow the instant Davis v. Smith case should be shackled to the entirely separate case of Bacon v. Toia, 580 F.2d 1044 (2 Cir. 1978) (order); and (B) our decision in Davis v. Smith should be reconsidered by the District court in the light of Quern v. Mandley, 436 U.S. 725, 747 (1978), which was decided more than two months before we decided Davis v. Smith.
 
 
 35
 (A) With respect to the Bacon v. Toia claim, the attempt to shackle the instant Davis v. Smith case to Bacon v. Toia has been attempted repeatedly by the State AG's office and has been rejected repeatedly by this Court before argument, during argument, after argument, and after our decision. The two cases involve entirely different substantive provisions in the New York scheme of public assistance. As a matter of fact, the regulations involved in the instant case (18 NYCRR §§ 352.7(g)(5) and 372.2(a)(2)) Were superseded by the newly enacted statute (N.Y. Soc. Serv. Law § 350-j) which was involved in Bacon v. Toia. See our opinion in Davis v. Smith, supra, 607 F.2d at 536. In short, the issue with respect to the interpretation of the regulations involved in Davis v. Smith in all likelihood will not arise again. This is hardly an appealing ground for the granting of the non-existent "petition for rehearing" in the instant case.
 
 
 36
 (B) With respect to the Quern v. Mandley claim, that decision was brought to our attention long before our Davis opinion was filed. Regardless of what bearing, if any, Quern has on Bacon, as the author of our Davis v. Smith opinion I did not think then, and I do not think today, that Quern even addressed the issue which was before us in Davis. Presumably the State AG's office thought likewise because it did not communicate with us with respect to Quern until Three months after Quern Had been decided and four weeks after our opinion in Davis Had been filed.
 
 
 37
 On the other hand, appellees' counsel on July 12, 1978 sent a letter to each member of the Davis v. Smith panel directing our attention to the Supreme Court's decision in Quern and explaining its inapplicability to the regulations involved in Davis :
 
 
 38
 "(T)he invalidity of the regulations challenged in the case at bar is not affected by Quern, because these regulations also deny Emergency Assistance to recipients of public assistance in cases of utility shut-off but not to other persons, such as non-recipients, in such cases. Furthermore, the regulations arbitrarily single out one particularly urgent type of emergency need for exclusion from coverage. The question as to whether a state may apply the flexible standards permitted by the federal Emergency Assistance provisions in such an arbitrary fashion as to violate the Social Security Act was also not addressed by the Supreme Court in Quern."
 
 
 39
 The State AG's office never took the trouble to respond to the letter each of us received from appellees' counsel dated July 12, 1978. As a matter of fact, right up to the present time, the State AG's office has never indicated specifically in what respect it claims the instant Davis case is affected by Quern. The closest it has come is the less than helpful assertion in the affidavit of Assistant AG Greenwald, sworn to September 8, 1978, after noting that "the Bacon decision . . . involved a statute superceding (sic) the regulations in the instant (Davis v. Smith ) case", went on to allege that "in view of Quern v. Mandley, supra, I submit the decision herein is erroneous. It seems only common sense that this case be coordinated with Bacon. If it is controlled by Quern, the instant case is also. However, This should be decided by the District Court. . . ." (emphasis added).
 
 
 40
 Aside from the dubious propriety of telling us what we should decide and what the district court should decide, this brings the State AG's office right back to square one. More than a year ago, on December 16, 1977, it filed a motion in this Court to stay all proceedings in Davis pending the outcome of Bacon. We denied that motion on January 18, 1978. Despite repeated attempts by the State AG's office to shackle the two cases together (without ever indicating why), our Court consistently has refused to do so for the reasons stated fully above: distinctly different substantive provisions of New York law and distinctly different issues are involved in the two cases.
 
 
 41
 In view of the majority's determination to "remand the case to the district court for further consideration in light of Quern v. Mandley ", I shall refrain from discussing the merits of that issue, limiting this dissent to the procedure by which we have reached this point.
 
 
 42
 In the long run it may not matter much whether our remand causes a busy district court to march up the hill for the sake of marching down again. See United States v. Tucker, 404 U.S. 443, 452 (1972) (Blackmun, J., dissenting in an opinion joined in by the Chief Justice). What is important, however, is that all concerned be aware of precisely what today's order by the majority is doing in direct contravention of the basic provisions of F.R.A.P. 40(a).
 
 
 43
 From what I regard as the mischievous precedent the majority establishes by this ill-advised order, I respectfully but emphatically dissent.
 
 
 
 [1]
 We assume familiarity with Judge Tenney's able district court opinion cited above, including his adequate findings of fact which we accept pursuant to Fed.R.Civ.P. 52(a)
 We also assume familiarity with prior decisions of this Court and of the district courts in this circuit involving analogous issues. See, e. g., Bacon v. Toia, 437 F.Supp. 1371 (S.D.N.Y.1977) (judgment enjoining enforcement of newly enacted statute which superseded regulations here involved), Aff'd by order, 580 F.2d 1044 (2 Cir. 1978), Remanded by order, No. 77-7567 (2 Cir. Aug. 21, 1978); Greklek v. Toia, 565 F.2d 1259 (2 Cir. 1977), Cert. denied, 436 U.S. 962 (1978).
 
 
 [2]
 Although the holding of the district court on the merits is cast in the form of a declaratory judgment and injunction, the court expressly stated that it would "decide the merits of the claims by ruling on the application for summary judgment rather than on the motion for a preliminary injunction." 431 F.Supp. at 1210
 
 
 [3]
 We refer throughout this opinion collectively to "plaintiffs", meaning the named plaintiff Priscilla Davis and the intervening plaintiffs who were granted intervention as of right. 431 F.Supp. at 1209
 
 
 [4]
 Davis had incurred expenses due to the sudden deaths of her brother and grandfather. The Warrens had sustained substantial losses due to a theft of money, food and clothing from their house. Other plaintiffs were faced with unexpectedly large bills because of errors by the electric utility company
 
 
 [5]
 See Bryant v. Lavine, 79 Misc.2d 425, 359 N.Y.S.2d 494, 496-97 (Sup.Ct., N.Y.Co., 1974)
 
 
 [6]
 18 N.Y.Code, Rules & Regs. § 352.7(g)(5) (1978) in relevant part presently provides:
 "(5) For a recipient of public assistance, an advance allowance may be provided to pay for utilities already furnished in the same dwelling in which he resides and for which a grant has been previously issued, to prevent a shut-off or to restore services. Such an allowance shall not exceed the cost of such utilities for the four-month period immediately preceding the advance payment, and may be provided only where the recipient has made a request in writing for such an allowance, and has also requested in writing that his monthly grant be reduced in such amounts as not to cause undue hardship. In no case shall such reduction exceed 10 percent of the household needs where one recovery is being made, except that where two or more recoveries and/or recoupments are made simultaneously, whether pursuant to this paragraph, paragraph (7) of this subdivision, or subdivision (d) of Section 352.31 of this Part, the total reduction in the assistance grant shall not exceed 15 percent of the household's needs. Such grant reduction shall continue until such time as the amount of the advance allowance shall have been fully repaid."
 Section 352.7(g)(5), cited by the district court, 431 F.Supp. at 1207-08 n. 1, does not reflect the July 14, 1977 and January 24, 1978 amendment of the regulations. These were promulgated subsequent to the date of the district court's opinion.
 
 
 [7]
 18 N.Y.Code, Rules & Regs. § 372.2(a)(2) (1975) in relevant part provides:
 "(e)mergency assistance shall be provided immediately by a social services district (if) . . . needs cannot be met under Part 352 of this Title by an advance allowance."
 
 
 [8]
 If a necessary connection can be shown between the nature of the need of the party seeking emergency assistance and a non-emergency situation, the state may be able automatically to bar emergency assistance for that category of need. In the instant case, however, the state has failed to demonstrate such a connection. See discussion Infra at p. 539
 
 
 [9]
 The allegations of Davis and the Warrens appear to present examples of such situations. See note 4 Supra. We do not pass, however, on whether their situations are "emergency situations" under the Social Security Act. The state should have an opportunity to address this in the first instance when it reviews the individual applications
 
 
 [10]
 The allegations of Vasquez, Malagon and Demitroff appear to present examples of such situations. Again, we do not pass on whether any of their situations constitute "emergency situations," but defer to the state in the first instance
 
 
 [1]
 F.R.A.P. 40(a) provides:
 "Time for Filing; Content; Answer; Action by Court if Granted. A petition for rehearing may be filed within 14 days after entry of judgment unless the time is shortened or enlarged by order. The petition shall state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended and shall contain such argument in support of the petition as the petitioner desires to present. Oral argument in support of the petition will not be permitted. No answer to a petition for rehearing will be received unless requested by the court, but a petition for rehearing will ordinarily not be granted in the absence of such a request. If a petition for rehearing is granted the court may make a final disposition of the cause without reargument or may restore it to the calendar for reargument or resubmission or may make such other orders as are deemed appropriate under the circumstances of the particular case."
 
 
 [2]
 See note 1 Supra