Mary MARKEL, on behalf of herself and her two minor children residing with her, and all persons similarly situated, Plaintiffs,

v.

Barbara BLUM, as Commissioner of the New York State Department of Social Services, Robert Wagner, as Commissioner of the Tompkins County Department of Social Services, John J. Murphy, as County Administrator of Tompkins County, and The County of Tompkins, a municipal corporation, Defendants.

No. 78-CV-547.

United States District Court, N. D. New York.

March 4, 1981.

Strom, Masson & Fuller, Cornell Legal Aid, Myron Taylor Hall, Ithaca, N. Y., for plaintiff; Barry Strom, Robin A. Masson, Sarah Betsy Fuller, Ithaca, N. Y., of counsel.

Robert Abrams, Atty. Gen., State of New York, Syracuse, N. Y., for defendant Blum; Anne S. Meadvin, Asst. Atty. Gen., Syracuse, N. Y., of counsel.

Paul N. Tavelli, Office of Tompkins County Attorney, Ithaca, N. Y., for County defendants.

## MEMORANDUM–DECISION

MUNSON, Chief Judge.

The named plaintiff, on behalf of herself, her minor children residing with her, and all

persons similarly situated, has instituted this class action, civil rights suit for declaratory, monetary, and injunctive relief, contesting the practice and policy of the defendants, administrators of New York's public assistance programs, of considering New York State Higher Education Services Corporation [HESC] loans as income for the purpose of determining medicaid eligibility. Ms. Markel contends that this practice violates not only the Higher Education Act of 1965, but also the Supremacy Clause and the Equal Protection Clause of the Fourteenth Amendment and various federal regulations governing the medicaid program.

Presently before the Court are motions by the named plaintiff for amendment of the complaint, class action certification and summary judgment, and by the defendants for dismissal of the complaint or, in the alternative, for cross-summary judgment. Before addressing these motions, however, it is necessary initially to consider briefly several separate sets of hopelessly complex statutes and regulations, which this action implicates, and then to examine in some detail the factual allegations of the plaintiff.

## I.

### A.

The Higher Education Act of 1965 and its amendments have created a comprehensive Guaranteed Student Loan Program [GSL Program], 20 U.S.C. §§ 1070 et seq.; see 45 C.F.R. § 177, which has been designed in part to make available to qualified students the opportunity to pursue postsecondary educations. Under this scheme, the United States Commissioner of Education [Commissioner] has been vested with broad administrative powers to foster the development of measures to effect the laudable purposes of the GSL Program. See 20 U.S.C. §§ 1070, 1071. In this regard, the principle features of the GSL Program are the insurance of loans, the payment of interest on loans, and the provision of funds for the operation of student loan programs.

Turning to a consideration of these features, by far the most prominent aspect of the GSL Program has been the loan insurance program, which operates in three ways. Firstly, under a federal insurance program, 20 U.S.C. § 1079, the Commissioner insures the student's loan directly, and according to the terms of an agreement executed between the Commissioner and the lender. Secondly, under a private, nonprofit institution loan program, 20 U.S.C. §§ 1078(c), 1078–1, the institution initially insures the student's loan, and the Commissioner, pursuant to the terms of a contract between him or her and the institution, then guarantees reimbursement to the institution of a specified portion of the loan in the event that the student defaults upon repayment. Thirdly, under a state loan insurance plan, 20 U.S.C. §§ 1078(c), 1078–1, which operates like the private, non-profit institution plan, a state agency initially insures a student's loan, and then, pursuant to the terms of a guaranty agreement and/or supplemental guaranty agreement between the Commissioner and the agency, the federal government agrees to reimburse the state agency for a percentage of any default losses.

Besides the loan insurance program, the Commissioner is authorized to enter into interest subsidy agreements with state and nonprofit private institutions. 20 U.S.C. § 1078(a) and (b). Under this agreement the Commissioner, on behalf of the student, pays to the lender a portion of the interest on the student's insured loan.

Finally, these same lenders may execute with the Commissioner a reserve fund agreement. 20 U.S.C. § 1072. According to the terms of such an agreement, the Commissioner advances to these entities monies to help create or enhance the reserve fund of the relevant student loan insurance program.

New York is one of many states that has created a state agency, the HESC, that provides needed educational loans to qualified students. HESC, in turn, has availed itself of the above three features of the GSL Program. Thus, under the terms of a

supplemental guaranty agreement, the Commissioner has agreed to reimburse HESC, in varying degrees, for losses on loans initially insured by HESC. In addition, pursuant to the terms of an interest subsidy agreement, the Commissioner has agreed to pay holders of HESC insured loans specified interest benefits. Furthermore, reserve fund agreements between the Commissioner and HESC have provided for advancements to HESC of at least nine million dollars.

### B.

The GSL Program, however, does not operate in a vacuum. Instead, to the extent that the Higher Education Act seeks, in part, to assist the economically needy, the Act's tortured provisions necessarily intertwines with the even more tortured provisions of the Social Security Act, which provides various forms of financial assistance to disadvantaged persons. Thus, in Section 507, a 1968 amendment to the Act, Congress specified that certain educational loans and grants would be disregarded in determining eligibility for several enumerated public assistance programs:

> For the purposes of any program assisted under [*inter alia,* the AFDC or medicaid programs] of the Social Security Act, no grant or loan *made or insured under any program administered by the Commissioner of Education* shall be considered to be income or resources.

Higher Education Act Amendments of 1968, § 507, Public Law 90–575, 82 Stat. 1014 (emphasis supplied).

The terms of Section 507, in turn, find expression in various programs created by the Social Security Act. Under the AFDC program, for example, the Department of Health and Human Services [HHS] has promulgated a regulation which provides that

> in determining eligibility for public assistance and the amount of the assistance payment, the following will be disregarded as income and resources . . . (d) Any grant or loan to any undergraduate student for educational purposes *made or insured under any programs administered by the Commissioner of Education.*

45 C.F.R. § 233.20(a)(4)(ii)(d) (emphasis supplied). Moreover, because the medicaid program incorporates the income disregards of the AFDC program in computing medicaid eligibility, *see* 42 C.F.R. § 435.711, *cf*: 42 C.F.R. § 435.831(a), medicaid administrators for the AFDC categorically and medically needy subprograms, must exclude under the principle of comparability, any "grant or loan made or insured under any program administered by the Commissioner of Education."

As a participant in the AFDC and medicaid schemes, the State of New York must devise plans that comport with federal requirements. *See* 42 U.S.C. §§ 602; 1396; N.Y.Soc.Serv.Law § 363–a. Thus, the New York Department of Social Services has closely tracked the language of 45 C.F.R. § 233.20(a)(4)(ii)(d) in its AFDC provisions:

> No grant or loan to an undergraduate student for educational purposes *made or insured under any program administered by the United States Commissioner of Education* shall be considered as income or resources in determining need and amount of assistance.

18 N.Y.C.R.R. § 352.16(d)(2) (emphasis supplied).

### C.

The issue in this case concerns whether New York HESC loans that are part of the GSL Program can be characterized as loans made or insured under any program administered by the Commissioner of Education, and thus *regarded* as exempt income in computing medicaid eligibility.

In December, 1977, the State Commissioner Barbara Blum promulgated Administrative Directive 77 ADM–134, declaring the HESC loans would not be excluded as exempt income in public assistance programs:

> Federal Regulations provide that grants or loans to an undergraduate student for educational purposes made or insured by the U.S. Commissioner of Education are not to be considered in determining need and amount of assistance . . .

Federal administered or insured programs which are totally exempt include:

1. Basic Educational Opportunity Grants (BEOG)
2. National Defense Student Loans
3. Supplemental Educational Opportunity Grants [SEOG]
4. College Work-Study Programs

Education grants, loans, scholarships and other income that are *not* made or insured by the U.S. Commissioner of Education/DHEW-Office of Education and therefore *not* exempt include:

1. Tuition Assistance Program Awards (TAP)
2. Educational Opportunity Program (EOP)
3. SEEK [Search for Elevation and Education through Knowledge]
4. College Discovery Program
5. Higher Educational Opportunity Program (HEOP)
6. Regents College Scholarships
7. New York Higher Educational Services Corporation Loans (HESC)

Two ramifications follow from the identification of HESC loans as non-federal awards. Firstly, pursuant to 18 N.Y.C.R.R. § 352.16(d)(1), a social services administrator must regard non-exempt, non-federal awards as income in determining AFDC eligibility, to the extent that these monies exceed "necessary or essential" educational expenses, such as tuition, books, and transportation costs. Had HESC loans been labeled as federal grants, the parties agree that any such excess could not be treated as income. *See* Higher Education Act Amendments of 1968, § 507, Public Law 90–575, 82 Stat. 1063; 45 C.F.R. § 233.20(a)(4)(ii)(d); 18 N.Y.C.R.R. § 352.16(d)(2). Secondly, in computing the amount by which award monies exceed educational expenses, a social service administrator first deducts all federal grants and loans from the amount of expenses. Non-federal loans, like HESC awards, are next applied. The effect of such ordering is, of course, "to produce the final maximum deduction in computation of public assistance entitlement." *Lumpkin v. New York State Department of Social Services*, 45 N.Y.2d 351, 355, 408 N.Y.S.2d 421, 423, 380 N.E.2d 249, 251, *appeal dismissed*, 439 U.S. 1040, 99 S.Ct. 713, 58 L.Ed.2d 700 (1978).

It is this non-federal status of HESC loans that the plaintiff challenges.

II.

No triable issue of material fact exists with respect to the claims asserted by Mary Markel.

In September, 1977, Ms. Markel, an AFDC medically needy recipient of medicaid benefits on behalf of herself and her two minor children, enrolled in a two year Construction Technology Program at Tompkins Cortland Community College. In December, 1977 she received BEOG and SEOG grants, as well as an HESC loan, to defray her educational expenses. Thereafter, in January, 1978, the Tompkins County Department of Social Services applied 77 ADM–34 and 18 N.Y.C.R.R. § 352.16 in determining Ms. Markel's continued medicaid eligibility. Thus, the Department regarded the BEOG and SEOG grants as exempt income, by virtue of their status as grant programs administered by the Commissioner. Although the "federal" grants exceeded Ms. Markel's education expenses, the excess was not applied to reduce her medicaid coverage. *See*, 45 C.F.R. § 233.20(a)(4)(ii)(d). However, because of the excess "federal" monies, the Department took account of all the "non-federal" HESC loan in computing the plaintiff's need for medical assistance, prorating the loan as an available resource over the four-month period that the loan was intended to cover. As a result of characterizing the HESC loan as available income, the Department arrived at a monthly income for Ms. Markel of $550.00, which included $172.00 in child support payments and $378.00 as alleged income from the HESC loan. This calculated income of $550.00 exceeded the applicable medical assistance eligibility standard of $358.00, and, accordingly, the Department concluded that Ms. Markel was ineligible for medicaid. Following an administrative

review of the Department's medicaid determination, the State Commissioner issued a Decision after Fair Hearing, which affirmed the inclusion of the HESC loan as income. Ms. Markel then instituted the instant action.

### III.

The plaintiff has moved to amend her complaint to reflect, *inter alia*, her request for attorneys' fees and the relief for absent class members. Consistent with the liberal treatment afforded Rule 15, and in the absence of any discernible prejudice to the defendants, the plaintiff's motion to amend is granted.

### IV.

Before addressing any substantive issues regarding the merits of this action, it is next necessary to examine the defendants' challenges to this Court's jurisdiction.

■ The plaintiff alleges that jurisdiction over this action lies under 28 U.S.C. § 1343(3). The Court agrees. In *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Court held that the Social Security Act and, by themselves, the Supremacy Clause and § 1983, supply no jurisdictional predicate under § 1343. *Id.* at 615, 623, 99 S.Ct. at 1915, 1918. The plaintiff here, however, does not assert only violations of the Social Security Act, the Supremacy Clause, and of § 1983. Instead, the plaintiff sets forth two classifications resulting from the defendants' practices that allegedly violate the Equal Protection Clause. Thus, this action appears to fall beyond the *Chapman* proscription.

■ Responding to the constitutional challenges, however, the defendants argue that the Equal Protection claims lack substantiality, and that this Court consequently lacks jurisdiction both under § 1343 and over any pendent statutory claims. In this regard, the Supreme Court has adopted a liberal posture with respect to the question of substantiality. A claim lacks substantiality if it is "immediately obvious ...

from the face of the complaint [that the contested practice is] so patently rational as to require no meaningful consideration", or if the argument is " 'devoid of merit' ", " 'insubstantial, implausible' ", " 'obviously frivolous' ", or " 'no longer open to discussion'." *Hagans v. Lavine*, 415 U.S. 528, 536–37, 541, 543, 94 S.Ct. 1372, 1378–79, 1381, 1382, 39 L.Ed.2d 577 (citations omitted). Here, the plaintiff's Equal Protection claims are: (1) that loans insured by the Commissioner directly or through nonprofit private institutions receive different treatment than loans insured initially by HESC and subsequently guaranteed by the Commissioner, for only the latter loans are regarded as income in determining medicaid eligibility; and (2) that the Commissioner discriminates between students solely on the basis of the student loan program through which a student receives a loan, with the result that certain loans are exempt from income while other loans are not. Examining these claims under the *Hagans* tests, this Court concludes that the contested classifications are not "so patently rational as to require no meaningful consideration." *Id.* at 541, 94 S.Ct. at 1381. Given, then, the substantiality of the plaintiff's equal protection claim, this Court is thus empowered to adjudge the plaintiff's pendent statutory claims. *See Youakim v. Miller*, 425 U.S. 231, 237, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976); *Hagans v. Lavine*, 415 U.S. at 543, 94 S.Ct. at 1382.

■ The defendants argue further that this Court should dismiss the action because the plaintiff has not availed herself of State judicial remedies. Plainly, however, there is no requirement that civil rights plaintiffs exhaust judicial remedies. *See, e. g., Leigh v. McGuire*, 613 F.2d 380, 383 (2d Cir. 1979). *See also McNeese v. Board of Education*, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963).

■ Finally, the defendants invoke the doctrine of abstention, stating that the social and economic policy decisions that are at issue in this action should be left to the legislative arena. Under none of the three circumstances identified in *Colorado River*

*Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975) does abstention seem warranted. First, *Pullman*-abstention seems inappropriate because this case "present[s] [no] federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law", *Id.* 424 U.S. at 814, 96 S.Ct. at 1244 (citing *Railroad Commission v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)), inasmuch as the state law seems clear. *See McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir. 1976), *cited in Winters v. Lavine*, 574 F.2d 46, 69 (2d Cir. 1978). Second, *Burford*-abstention is unwarranted because no truly independent state concern exists that would be disrupted by review in this action. *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244 (citing *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)), and because the questions presented turn primarily on the defendants' interpretation and application of federal law. Last, no state proceedings are pending, and thus *Younger-Juidice* abstention appears unnecessary. *Id.* 424 U.S. at 816, 96 S.Ct. at 1245 (citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

Inasmuch as jurisdiction properly lies under § 1343, this Court shall not grant the defendants' motions to dismiss on these asserted jurisdictional grounds.

## V.

The plaintiff seeks class action certification under Fed.R.Civ.P. 23(a) and 23(b)(2) on behalf of all persons who have had or will have their medical assistance terminated, reduced, or denied due to defendants' practice and policy of treating loans insured by HESC as income or resources for medicaid purposes.

In order to receive class action certification, the plaintiff must first satisfy the numerosity, commonality, typicality, and adequacy or representation requirements of Rule 23(a).

With respect to the numerosity requirement contained in Rule 23(a)(1), it appears that the number of HESC recipients in Tompkins County alone between 1977 and January, 1979 who were denied medicaid benefits is approximately 225. Joinder thus clearly seems impracticable.

With respect to the commonality requirement of Rule 23(a)(2), the plaintiff contends that one question of law common to all members of the class is whether Section 507 of the 1968 Higher Education Act Amendments, 45 C.F.R. § 233.20(a)(4)(ii), and 42 C.F.R. § 435.831(a) require medicaid administrators not to disregard HESC loans as income for medicaid purposes. This question indeed appears to underlie the claims of all proposed class members.

With respect to Rule 23(a)(3), typicality appears to exist. The alleged injury of Ms. Markel indeed seems to typify the injuries of the absent class members.

With respect to the requirement set forth in Rule 23(a)(4), the plaintiff asserts that she will fairly and adequately represent the absent class members. In this regard, no conflict of interest exists between Ms. Markel and the absent class members. Furthermore, Ms. Markel's attorney, a member of the faculty of Cornell Law School, seemingly possesses the experience required for this type of litigation.

Although the plaintiff thus satisfied the criteria of Rule 23(a), she must additionally meet the certification requirement of Rule 23(b)(2). Here, the defendants, by their inclusion of HESC loans as income, have indeed "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive" or declaratory relief for the entire class. In this circuit, however, the plaintiff "must present additional reasons for obtaining certification of the class Rule 23(b)." *Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978), *vacated and remanded on other grounds*, 607 F.2d 540 (2d Cir. 1979). "[W]here retroactive monetary relief is not at issue, and the prospective benefits of declaratory and injunctive relief will bene-

fit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court *may* decline certification." *Id.* (emphasis supplied). For the reason advanced by the plaintiff, namely, the need to avoid the problems of mootness and of enforcement, and because retroactive relief is indeed at issue here, this Court concludes that the plaintiff has established the appropriateness of certification under Rule 23(b). *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

The defendants, however, object to class action certification on the ground that it is unnecessary where members of the class would be protected, *inter alia*, by the principle of res judicata and where state officials are involved. Moreover, the defendants contend, class action certification is improper where the relief sought for the class is monetary relief.

These arguments by the defendants must be rejected. Not only would the res judicata argument make meaningless the provisions of Rule 23, but also the defendants have given no affirmative assurances that they would apply any relief classwide. *See Wells v. Malloy,* 510 F.2d 74, 76 n. 3 (2d Cir. 1975); *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Bacon v. Toia,* 437 F.Supp. 1371, 1383 n. 11 (S.D.N.Y.1977), *aff'd without opinion,* 580 F.2d 1044 (2d Cir. 1978). In addition, the prospect of retroactive payments hardly seems a basis for denying class action certification at this stage.

Accordingly, the plaintiff's motion for class action certification is granted.

## VI.

■ The Court shall now turn to the substance of the plaintiff's challenges. In this regard, it appears well settled that federal district court should avoid reaching constitutional questions if it can dispose of a case on non-constitutional grounds. *See, e. g., Wolston v. Reader's Digest Association, Inc.,* 443 U.S. 157, 160–61 n. 2, 99 S.Ct.

2701, 2704 n. 2, 61 L.Ed.2d 450 (1979); *Califano v. Yamasaki,* 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979); *Hagans v. Lavine,* 415 U.S. at 543, 94 S.Ct. at 1382. Hence, this Court shall first address the plaintiff's statutory claims.

### A.

■ As already noted, the question presented is whether HESC loans that are part of the GSL Program are loans "made or insured" in a program administered by the Commissioner, and thus disregarded for purposes of medicaid eligibility. *See* Higher Education Act Amendments of 1968, § 507; 45 C.F.R. § 233.20(a)(4)(ii)(d); 42 C.F.R. § 435.831(a).

In making her argument that these HESC loans are exempt, the plaintiff cites the extensive involvement of HESC with the GSL program. Because, the plaintiff argues, HESC and the Commissioner have entered into at least three agreements under the GSL program, which are important to the continued disbursement of HESC benefits to students, these loans are made *and* insured by the Commissioner. Moreover, insofar as the Commissioner has broad powers over HESC under the GSL program, the plaintiff contends that HESC loans are indeed part of a program administered by the Commissioner.

The plaintiff also relies upon the legislative history in this area. Noting that in various sections of the Higher Education Act Amendments of 1968 Congress distinguished "federal" and "nonfederal" programs, and denominated state subprogram loans as such, Ms. Markel concludes that had Congress intended to exempt state loan subprograms of the GSL program, it would have so specified. Hence, the absence of any restriction on the word "program" in § 507, the plaintiff continues, indicates a congressional intent that loans of all GSL subprograms be excluded in determining medicaid eligibility. Additionally, the plaintiff maintains that Congress used the word "guaranteed" interchangeably with the word "insured" throughout the 1968 Amendments.

Finally, as further support for her position, the Plaintiff points to certain positions by the Department of Health and Human Services [HHS], the agency charged with the administration of the AFDC and medicaid programs. It appears that HHS, at various times, has regarded the State's practice of including HESC loans in the determination of medicaid eligibility as not in conformance with federal requirements.

For all of these reasons, the plaintiff argues not only that HESC loans fall within the scope of § 507 and 45 C.F.R. § 233.-20(a)(4)(ii), but also that HESC loans are "federal" for the purpose of the *Lumpkin* rule regarding the priority of loan deductions.

In response to these arguments, the defendants draw a distinction between "insured" and "guaranteed". Observing that Section 507 refers to loans "made or insured" by the Commissioner, the defendants assert that HESC loans are not insured, but merely guaranteed, by the Commissioner. Additionally, the defendants contend that the Commissioner has given sole responsibility for the administration of the loan program to HESC.

### B.

Certainly one New York court has concluded that HESC loans are non-exempt income. *See Stutzman v. Fahey*, 397 N.Y. S.2d 861, 863, 90 Misc.2d 501, 503 (Sup.Ct. Albany Co. 1977). The Court, however, does not share this position.

Examining the language of the applicable statute, it is true that Congress has not explicitly used the words "made" or "insured". Instead, the key word in 20 U.S.C. § 1078(c)(1)(A) is "reimburse". It is also true that, in its Supplemental Guaranty Agreement with the State, the Office of the Commissioner of Education expressed its intent to "guarantee" or "reimburse" or "reinsur[e]" student loans. The legislative history, however, supports the plaintiff's assertion that Congress used the word "insured" interchangeably with "guaranteed". For example, although the parties apparently agree that HESC initially *insures* a

loan, *see* 20 U.S.C. § 1078(c) (referring to the State's "insurance obligation"), the Senate Report regarding the 1968 Amendments to the Higher Education Act of 1965 notes that the GSL amendments will "provide for what has come to be called Federal 'reinsurance' of loans *guaranteed* by *State agencies*". S.Rep. No. 1387, *reprinted in* [1968] U.S.Code Cong. and Admin.News at 4051. Moreover, the plain meaning, if not effect, of "to reinsure" is "to insure".

Additionally, Section 507 is part of the "Miscellaneous" provisions under Title V of the 1968 Amendments. *See* [1968] U.S. Code Cong. and Admin.News 1169 at 1228. In the Senate Report, however, this section appeared as Section 254 of Title II, which discussed, *inter alia*, the GSL Program. *See* S.Rep. No. 1387, *reprinted in* [1968] Code Cong. and Admin.News 4035 at 4096–4106. The only reasonable inference that one can draw from the position of Section 254 in the Senate Report is that this section was intended to apply to GSL loans, as well as to other student assistance programs.

Finally, HHS has maintained an apparently consistent position with respect to the defendants' practice of including HESC loans as income. In an Interpretation statement, HHS specifically identified loans under the GSL program as loans falling under Section 507 and under 45 C.F.R. § 233.20(a)(4)(ii)(d). Interpretation Action Transmittal AT–77–44 (APA) (April 21, 1977). HHS has reiterated this position in various informal letters, advising the State Commissioner that New York is not in compliance with federal requirements. Plaintiff's Appendices To Memorandum In Support Of Plaintiff's Motions For Summary Judgment, Class Certification And Leave to Amend The Complaint, Appendices A, B, C, D, E.

Given this persuasive legislative and administrative support for the exemption of HESC loans under the GSL Program, the plaintiff's motion for summary judgment is granted, and the defendants' cross-motions for summary judgment are denied. In view of this disposition, the Court finds it unnecessary to address the plaintiff's constitutional claims.

## VII.

The next question concerns the scope of relief. In addition to declaratory and injunctive relief, the named plaintiff seeks restitution for herself and a recomputation of medicaid eligibility under the procedures contained in 42 U.S.C. § 1396a(a)(34) for absent class members. In this regard, the defendants have objected that any award of monetary relief is barred by the Eleventh Amendment.

Certainly the Eleventh Amendment bars any direct restitution by the State Commissioner in her official capacity. *See, e. g., Quern v. Jordan,* 440 U.S. 332, 339–41, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 664–67, 94 S.Ct. 1347, 1356–58, 39 L.Ed.2d 662 (1974). The County defendant, however, enjoys no such immunity, either directly or indirectly as an "arm of the state". *See, e. g., Lake County Estate v. Tahoe Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Holley v. Lavine,* 605 F.2d 638, 642–43 (2d Cir. 1979), *cert. denied sub nom. Blum v. Holley,* 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980); *Calkins v. Blum,* 511 F.Supp. 1073 (N.D.N.Y.1981).

Accordingly, the defendant Tompkins County shall restore to the named plaintiff amounts wrongfully paid by her for medical care, and shall recompute the medicaid eligibility of any class members so requesting.

## VIII.

The last issue in this action concerns attorneys' fees. Section 1988 of Title 42 provides for a discretionary award of attorneys' fees in all § 1983 actions. The defendants, however, argue that a claim arising out of the Social Security Act falls beyond the scope of § 1983; that attorneys' fees ought to be denied as a matter of principle to the taxpayer funded employer of the plaintiff's attorney; and that the request is unsupported by accurate time records.

All of these arguments by the defendants must be rejected. First, § 1983, and § 1988, indeed encompass violations of the Social Security Act. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Second, the law in this Circuit recognizes that attorneys of publicly funded legal offices may recover fees. *See, e. g., Torres v. Sachs,* 538 F.2d 10, 12–13 (2d Cir. 1976); *Holley v. Lavine,* 464 F.Supp. 718, 725 (W.D.N.Y.), *aff'd,* 605 F.2d 638 (2d Cir. 1979), *cert. denied sub nom. Blum v. Holley,* 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Finally, the absence of. time records in no way precludes a judicial determination of the plaintiff's right to recover attorneys' fees.

In the judgment of this Court, the defendant Blum, in her official capacity as Commissioner of the New York State Department of Social Services, shall bear these expenses.

## IX.

For the foregoing reasons, the plaintiff's motions to amend her complaint, for class action certification, summary judgment, and attorneys' fees are granted. The defendants' motion for dismissal of the complaint and cross-motion for summary judgment are denied.

A separate order will follow.

### JUDGMENT–ORDER

MUNSON, Chief Judge.

Upon all the proceedings had herein, this Court having on March 3, 1981, issued its findings of fact, conclusions of law, and final decision on the merits, it is

ORDERED, that the defendants' motion to dismiss and cross-motion for summary judgment are denied in all respects; and it is further

ORDERED, that this action is maintainable as a class action pursuant to Fed.R. Civ.P. 23(a) and 23(b)(2). The class consists of all persons who have had or will have their medical assistance terminated, re-

duced, or denied due to defendants' practice and policy of treating HESC loans that are part of the GSL Program as income or resources for medicaid purposes; and it is further

ORDERED, ADJUDGED, and DECREED, pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201, that the defendants' practice and policy of counting HESC loans that are part of the GSL Program as income and resources for medical assistance purposes have been and are illegal and unconstitutional in that they conflict with the Social Security Act and regulations issued thereunder; and it is further

ORDERED, that the defendants, their successors, assigns, and employees be and they hereby are enjoined from enforcing the Decision after Fair Hearing dated June 29, 1978; and from continuing to count as income for medicaid eligibility purposes loans insured by HESC under the GSL Program; and are directed to exempt such loans in determining eligibility for, and amount of, medical assistance benefits; and it is further

ORDERED, that the defendant BARBARA B. BLUM, as Commissioner of the New York State Department of Social Services, or her successors in office, be and they hereby are directed to give immediate notice to the appropriate local Departments of Social Services of the effect of this Judgment-Order and of the accompanying Memorandum-Decision, such notice to include, but not be limited to, amendments of all publications, directives, and other documents issued by the New York State Department of Social Services; and it is further

ORDERED, that the COUNTY OF TOMPKINS be and it hereby is directed to restore to the named plaintiff all amounts wrongfully paid by her for medical care, pursuant to the terms of this Judgment-Order and the accompanying Memorandum-Decision; and it is further

ORDERED, that the defendant BARBARA B. BLUM, as Commissioner of the New York State Department of Social Services, or her successors in office, be and

they hereby are directed to give notice or cause the appropriate local Departments of Social Services to give notice in writing within thirty (30) days of the date of this judgment to all class members who have had their medicaid terminated, reduced, or denied beginning with the first day of the first month in the three-month period preceding the month of judgment in this case, that these class members, upon request, may have their medicaid eligibility and amount of coverage recomputed with any HESC loans under the GSL Program disregarded; and it is further

ORDERED, that the defendant BARBARA B. BLUM, as Commissioner of the New York State Department of Social Services, or her successors in office, be and they hereby are directed to give notice or cause the appropriate local Departments of Social Services to give notice in writing within thirty (30) days of the date of this judgment to all class members who are not included in the above paragraph and who have had their medicaid reduced, terminated, or denied at any time, such notice to apprise these class members of this Court's decision and to inform them that they may pursue any claims they have due to the consideration of HESC loans through state administrative or judicial forums; and it is further

ORDERED, that the recomputation to be made herein for these absent class members shall be made in accordance with 42 U.S.C. § 1396a(a)(34); and it is further

ORDERED, ADJUDGED, and DECREED, that the plaintiffs have judgment for costs and for attorneys' fees, in an amount to be fixed by the Court upon submission of papers, against the defendant BARBARA B. BLUM, as Commissioner of the New York State Department of Social Services, or successor in office.